### ANGLO–AMERICAN FUR MERCHANT CORPORATION v. UNITED STATES et al.

District Court, S. D. New York.

Feb. 2, 1948.

Hill, Rivkins & Middleton, of New York, City, (Arthur O. Louis, of New York City, of counsel), for libelant.

John F. X. McGohey, U. S. Atty., of New York City, (William H. Lane, of New York City, of Counsel), for respondents.

RYAN, District Judge.

Libelant seeks to recover for damage to a cargo of 47 bales of pony skins shipped from Archangel, Russia, to New York.

On or about August 6, 1942, the cargo was laden aboard the S. S. Ironclad, owned by respondent, United States of America and operated under a general agency agreement by respondent, Waterman Steamship Agency, Ltd. A bill of lading was issued reciting that the goods were received aboard in apparent good order and condition. The shipment was consigned to Amtorg Trading Corporation of New York; libelant prior to delivery in New York became the owner of it.

The S. S. Ironclad put out to sea, encountered difficulties resulting in its stranding and put into the port of Molotovsk, Russia. Upon entering this port, the ship settled on the bottom of the harbor and was down by the stern.

Commander J. H. Harshaw was the Assistant Naval Attache and U. S. War Shipping representative and was concerned with vessels of United States Registry in the vicinity of Archangel, including Molotovsk. His deposition discloses that he went aboard the S. S. Ironclad on several occasions while that vessel lay in the harbor of Molotovsk and that he found the shipment of skins, here involved, in good condition. His last inspection was at least a week before the goods were taken from the vessel.

There is some proof that it was decided that the cargo aboard was to be removed and the ship sold to the Russian government.

Commander Harshaw designated the S. S. Ralph Waldo Emerson, owned by respondent, United States of America, and operated under a general agency agreement by the respondent, American President Lines, Ltd., as the vessel to carry the shipment to the United States.

The skins were received on board the S. S. Emerson on February 3, 1943 and the bill of lading, a copy of which is annexed to the answer, bears the notation "some of these packages in wet condition when shipped." This bill of lading was not introduced in evidence.

Respondents, referring to clause "10" of the Ironclad bill of lading, argue that the voyage of the Ironclad was abandoned, that the provisions of its bill of lading ceased to be effective and that the bill of lading of the S. S. Emerson governs the shipment. Clause "10" provides, in substance, that in the event the carrier is prevented from delivering the goods at the port of destination because of causes beyond its control, the carrier is to notify the shipper; that the shipper, if he then desires the goods to be delivered to the port of destination, must apply therefor in writing, and that the carrier, if able to comply with such request, shall forward the goods on another vessel under a new bill of lading.

This provision of the bill of lading did not come into operation. The conduct of the parties concerned with the vessel and its cargo does not indicate that they considered this provision as the guide for their actions.

Under clause "23" of the Ironclad bill of lading, the carrier was at liberty to transship the cargo, if necessary, and the provisions of the bill of lading in that event were to remain in effect. But the Court does not conclude that its decision

1002

must rest upon a conclusion that the Ironclad bill of lading governed the shipment throughout the voyage to New York.

 The goods having been received aboard the Ironclad in apparent good order and condition it was the duty of the carrier to discharge the goods in like order unless it was excused by reason of the provisions of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., or by some other provision of law. The Vallescura, 293 U.S. 296, 305, 55 S.Ct. 194, 79 L.Ed. 373; The Schickshinny, D.C., 45 F.Supp. 813; The Mangalia, D.C., 69 F. Supp. 688. The evidence presented does not excuse or exonerate the carrier.

Respondents contend that the goods were delivered to the shipper when they were removed from the Ironclad, but the evidence does not establish that the goods were delivered to the shipper either actually or constructively. From the testimony offered the court cannot infer that the skins became wet as a result of the acts of the shipper or its agents. Even assuming that the Ironclad bill of lading ceased to be effective when the goods were removed, respondents have not met the burden imposed upon them either to show that the goods were re-delivered to the shipper in good condition or to explain the cause of the damage.

The evidence presented by respondents concerning the discharge of the shipment from the Ironclad consists of the deposition of Commander Harshaw. Much of his testimony is hearsay; he was not present at Molotovsk when the furs were transferred; and, as he was away and did not return until a week later he could not testify as to their condition when the goods were transshipped.

There is no evidence which would warrant a finding that the respondent, American President Lines, Ltd., as general agent of respondent, United States of America, and operating the S. S. Ralph Waldo Emerson, has breached any duty owing to libelant, so that as to it the libel must be dismissed. Nor has any liability on the part of respondent, Waterman Steamship Agency Ltd., been established, so that as to it, also, the libel must be dismissed. The proof does not reflect that the shipper of the goods did not understand that the owner of the Ironclad was the United States of America, and the Master in signing the bill of lading acted as agent for respondent, United States of America.

A decree may be entered in favor of libelant against the United States of America with the usual reference on the issue of damages.

Submit proposed findings.